OPINION OF THE COURT
Gustin L. Reichbach, J.
*496 The defendant, Mickey Cass, is charged in indictment No. 7203/03 with two counts of murder in the second degree (Penal Law § 125.25 [1], [2]), involving the strangulation and death of Victor Dombrova in Kings County on September 25, 2003. The defendant is also charged, in indictment No. 5029/2003, in the Supreme Court of Erie County, of causing the death, also by means of strangulation, of Kevin Bosinski on or about July 25, 2002.
On May 18 and 19, 2004 the court conducted hearings in connection with defendant’s Dunaway/Mapp/Huntley and Wade motions to suppress evidence, statements, and identification testimony.
A decision setting forth the court’s findings of fact and conclusions of law was issued June 9, 2004 denying in its entirety the defendant’s motion. (See, People v Cass, NYLJ, Aug. 6, 2004, at 19, col 3.)
At issue in that prior decision was the voluntariness of statements made by the defendant, both written and on videotape, in which he implicated himself in the strangulation deaths of both Victor Dombrova and Kevin Bosinski. The People now move in a motion in limine, pursuant to People v Molineux (168 NY2d 264 [1901]) and People v Ventimiglia (52 NY2d 350 [1981]), to admit at the trial for the Brooklyn homicide the defendant’s statement regarding the death of Bosinski in Buffalo. The People contend that the defendant’s statement regarding the Buffalo events is highly relevant to trial issues in the Brooklyn homicide because it demonstrates: (a) motive, (b) intent, (c) absence of mistake, (d) common scheme or plan, and further, is necessary (e) to rebut the defense of self-defense or extreme emotional disturbance.
The defendant’s statements about both the Brooklyn and Buffalo homicides contain arguably both inculpatory and exculpatory statements. The defendant certainly provides a common theme in his narrative regarding both these incidents.
The defendant told the police, and both the prosecution and defense affirm, that his father sexually abused him over an extended period of time when he was a small child. The defendant further stated that he had been befriended by both of the deceased. In the Dombrova/Brooklyn homicide, the defendant became the deceased’s roommate for a period of time. The events in Buffalo regarding the death of Bosinski occurred in the course of one night. In both cases, the defendant explained that he had told both of the deceased his history as an abused *497 child. In both instances, according to the defendant, each of the deceased proceeded with an unwanted sexual advance including physical contact. In response, defendant stated that he “lost it,” got into a physical struggle with both of the victims, and strangled each to death. In Brooklyn, he claimed that he had strangled Dombrova with his hands and then used his belt to transport the victim to a closet in the apartment where he hid him. In the Bosinski killing, he indicated that he began to strangle the deceased with his hands and at some point he used his belt to finally kill him.
The defense has served notice that it may offer evidence of mental disease or defect. It now appears that that claim will not be pursued. However, the defense has announced that it will raise the affirmative defense of extreme emotional disturbance as defined in Penal Law § 125.25 (1) (a). A similar notice has been filed with respect to the Buffalo homicide currently pending in the Supreme Court, Erie County.
The defendant has been charged with intentional murder. (Penal Law § 125.25 [1].) The defense has indicated that it will argue that because of the defendant’s history as a sexually abused child, he acted, in response to the victims’ sexual advances, under the influence of an extreme emotional disturbance, which mitigates the intent element required for conviction for intentional murder in the second degree. The prosecution argues that the defendant’s statements regarding the Buffalo death are necessary and highly probative evidence in the Brooklyn prosecution to demonstrate that the defendant acted intentionally, suggesting that the defendant purposefully targets and kills gay men because of his deep-seated, psychological wounds.[1]
The People’s arguments rest on its view that presenting the defendant’s statements and actions in Buffalo is necessary to rebut the defense of extreme emotional disturbance because it is “implausible . . . that he put himself in exactly the same situation twice.”
In response, the defense argues that the prosecution’s theory that “lightning can’t strike twice” is scientifically insupportable and, having declared that the prosecution does not intend to present expert testimony, asks that the District Attorney be *498 prohibited from offering evidence of the Buffalo homicide to prove a “commonsense” argument that is contradicted by applied science.
The only relevant exception for the introduction of the defendant’s statement about the Buffalo incident in the Brooklyn homicide prosecution is the intent exception, i.e., that it is necessary to elucidate defendant’s state of mind while committing the Brooklyn murder and to rebut his claims of extreme emotional disturbance.[2]
It might be argued that, like identity, intent is not really an issue in this case. Under Penal Law § 125.25 (1) (a), the affirmative defense of extreme emotional disturbance does not negate the element of intent but rather mitigates it, thereby reducing the crime to manslaughter in the first degree (which is also an intentional crime). In making its Molineux application, the prosecution argues that the Buffalo homicide is highly relevant to the defendant’s state of mind at the time of the Brooklyn murder and central to the issue of the defendant’s affirmative defense of extreme emotional disturbance. The prosecution’s theory is that the defendant deliberately targeted “outwardly homosexual victims, used them to purchase drugs, managed to get the victims to agree to let him stay with them, strangled them to death with his hands and belt, took money and fled.” Because of the defendant’s own history as a sexually abused child, the District Attorney claims that these similar crimes are highly probative of the defendant’s intent: to purposely, deliberately and intentionally target and kill gay men.
Proof of prior crimes or bad acts is not admissible for the purpose of establishing the defendant’s propensity or predisposition to commit the crime charged in the indictment. People v Molineux (168 NY 264 [1901]) allows the admission of such evidence, not to show criminal propensity but to establish motive, opportunity, intent, common scheme or plan, knowledge, *499 identity or absence of mistake or accident. The court is charged with weighing the prejudice against the probative value. The proffered evidence must be “highly probative” and “directly relevant” to the purpose for which it is offered and have a natural tendency to prove such purpose. (People v Allweiss, 48 NY2d 40 [1979]; People v Santarelli, 49 NY2d 241 [1980].)
As noted, there is a subtle distinction between a defendant’s state of mind and the legal requirement of intent. It is the defendant’s state of mind at the time of these killings that will be the contested issue for the jury to determine.
Most often, intent may be inferred from the very nature of the act. Strangling someone to death would normally preclude evidence of other crimes since intent can easily be inferred by the prolonged nature of manually strangling someone. Typically, it is only when intent cannot be inferred from the act itself that acts of a similar character may be offered to prove intent. Such crimes typically involve passing counterfeit money, possession of stolen property, forgery and fraud, where intent cannot be inferred from the commission of the act itself and where proof of intent is often unobtainable except by evidence of successive repetitions of the act. (People v Molineux, supra at 298.) The theory underlying the intent exception is predicated on the increased probability arising from repetitive actions: eliminating the element of innocent intent by multiplying instances of the same conduct. (Matter of Brandon, 55 NY2d 206 [1982].) Yet the rationale for the Molineux exception fully obtains in the circumstances presented here.[3]
Unlike the typical Molineux/intent issue, the defendant here is not claiming an innocent state of mind (People v Schwartzman, 24 NY2d 241, 248 [1969]). The defendant claims that his acts, while intentional, were committed under a state of extreme emotional disturbance. By asserting the defense of extreme emotional disturbance, the defendant has put his state of mind directly in issue. When the defendant’s mental state in doing the act is placed in issue, as here, proof of other crimes may be admissible under the intent exception to the Molineux rule. (See, People v Alvino, 71 NY2d 233 [1987]; People v Ingram, 71 NY2d 474, 480 [1988]; People v Santarelli, 49 NY2d 241 [1980].) *500 As the Court noted in Ingram (supra at 480), “It is the duplication of inculpatory conduct which makes the innocent explanation improbable.” As Professor Wigmore has noted, “it is the repetition . . . that is significant, and a subsequent instance reduces the probability of innocence equally as well as a prior one.” (2 Wigmore, Evidence § 321, at 285 [Chadbourn rev 1979].) The intent exception is predicated primarily on the theory of increased probability arising from repetitive actions. According to Professor Wigmore, “The argument here is purely from the point of view of the doctrine of chances — the instinctive recognition of the logical process which eliminates the element of innocent intent by multiplying instances of the same result until it is perceived that this element cannot explain them all.” (2 Wigmore, Evidence § 302, at 241 [Chadbourn rev 1979], cited in Matter of Brandon, 55 NY2d 206 [1982].)
Such reasoning is equally applicable to a claim of extreme emotional disturbance. Evidence of the other homicide has strong probative value as tending to rebut the defendant’s claim of extreme emotional disturbance. This is precisely the argument the prosecution makes; that as a matter of common sense, the jury must be permitted to decide whether or not the defendant’s claim of extreme emotional disturbance is eliminated by repetition of the act.
For its part, the defense argues that there is no scientific or psychiatric basis for the People’s assertion and that its own experts will assert that given defendant’s social and psychological history, he could suffer multiple instances of extreme emotional disturbance.
In the court’s view, this will be a question for the jury to decide on the basis of all the relevant evidence. Consequently, the People’s application is granted to the extent of permitting introduction of the defendant’s statement about the Buffalo homicide as it bears on the affirmative defense of extreme emotional disturbance.[4]

. The prosecution has indicated that at this stage it does not anticipate presenting any expert testimony on the defendant’s psychological state and, accordingly, has served no expert witness notice.

. The People raise other arguments urging that other Molineux exceptions also permit the introduction of the defendant’s statements regarding the Buffalo incident, i.e., to show lack of mistake or to demonstrate a common scheme. They even suggest that the motive exception is applicable. The court finds none of these additional exceptions applicable based on the facts in this case. As defense counsel indicates, the defendant acknowledges committing these acts, claiming to have done so under an extreme emotional disturbance. There is no assertion that these acts were committed by accident or mistake. The prosecution’s claim that the second murder was committed to avoid detection for the first murder is illogical and without a shred of factual support.

. The court has found no reported cases discussing the Molineux exception in the context of a defense of extreme emotional disturbance. (But see, People v Santarelli, 49 NY2d 241 [1980] [where the Court of Appeals said Molineux evidence was permitted where a defense claim of insanity was asserted].)

. The court will also permit the introduction of the autopsy report in the Buffalo death.