[965 NE2d 918, 942 NYS2d 416]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICKEY CASS, Appellant.

Argued January 5, 2012; decided February 16, 2012

**POINTS OF COUNSEL**

*Appellate Advocates*, New York City (*Warren S. Landau* and *Lynn W.L. Fahey* of counsel), for appellant. I. Appellant, who had been severely abused by his father and had serious psychiatric conditions as a result, was denied fair consideration of his extreme emotional disturbance defense by the admission of his videotaped confession to killing another gay man who had tried

to sexually assault him. (*People v Rojas*, 97 NY2d 32; *People v Alvino*, 71 NY2d 233; *People v Fiore*, 34 NY2d 81; *People v Condon*, 26 NY2d 139; *People v Molineux*, 168 NY 264; *People v Fitzgerald*, 156 NY 253; *People v Vargas*, 88 NY2d 856; *People v Allweiss*, 48 NY2d 40; *People v Arafet*, 13 NY3d 460; *People v McKinney*, 24 NY2d 180.) II. Appellant was denied the effective assistance of counsel by his attorney's failure to protest the prosecutor's summation arguments that appellant was a "predator" and "multiple murderer" who "systematic[ally] prey[ed]" upon the vulnerable, that the defense expert was merely a "hired gun," and that the defense tried to hide evidence and elicited testimony about appellant's history of abuse merely to "tug at" the jury's "heart." (*Strickland v Washington*, 466 US 668; *People v Turner*, 5 NY3d 476; *People v Baldi*, 54 NY2d 137; *Washington v Hofbauer*, 228 F3d 689; *People v Benevento*, 91 NY2d 708; *People v Zaborski*, 59 NY2d 863; *People v Wallace*, 187 AD2d 998; *People v Caban*, 5 NY3d 143; *Murray v Carrier*, 477 US 478; *Kimmelman v Morrison*, 477 US 365.)

*Charles J. Hynes, District Attorney*, Brooklyn (*Joyce Slevin, Leonard Joblove* and *Victor Barall* of counsel), for respondent. I. The trial court properly admitted evidence of a prior uncharged crime. In any event, any error was harmless. (*People v Alvino*, 71 NY2d 233; *People v Allweiss*, 48 NY2d 40; *People v Marrin*, 205 NY 275; *People v Steinberg*, 170 AD2d 50, 79 NY2d 673; *People v Ingram*, 71 NY2d 474; *People v Santarelli*, 49 NY2d 241; *People v Till*, 87 NY2d 835; *People v Hudy*, 73 NY2d 40; *People v Ventimiglia*, 52 NY2d 350; *People v Rabideau*, 82 AD3d 1283; *People v Schicchi*, 13 AD3d 470.) II. Defendant received effective assistance of counsel. (*People v Brown*, 17 NY3d 742; *Strickland v Washington*, 466 US 668; *People v Baldi*, 54 NY2d 137; *Bierenbaum v Graham*, 607 F3d 36; *Williams v Taylor*, 529 US 362; *People v Turner*, 5 NY3d 476; *People v Baker*, 14 NY3d 266; *Greiner v Wells*, 417 F3d 305, 546 US 1184; *People v Caban*, 5 NY3d 143; *Rosario v Ercole*, 601 F3d 118, 617 F3d 683.)

**OPINION OF THE COURT**

JONES, J.

The primary issue we address is whether the trial court properly admitted evidence of defendant's uncharged murder to rebut defendant's extreme emotional disturbance defense concerning the murder for which he was on trial. Although we have considered the use of *Molineux* evidence (*People v Molineux*, 168 NY 264 [1901]) to rebut a defense predicated on a

defendant's impaired state of mind in other contexts (*see e.g. People v Santarelli*, 49 NY2d 241 [1980] [legal insanity defense]), this appeal presents the first opportunity for the Court to address the use of *Molineux* evidence in the context of an extreme emotional disturbance defense.

In affirming the order of the Appellate Division, we hold that the evidence was properly admitted. Additionally, we reject defendant's claim that he was denied effective assistance of trial counsel. Further, defendant's claim, raised in his pro se supplemental brief, that he did not authorize defense counsel to raise the extreme emotional disturbance defense involves matters which are dehors the record, and is therefore not reviewable by this Court.

## I.

On September 25, 2003, defendant strangled his then roommate, Victor Dombrova, during an argument in Dombrova's Brooklyn apartment in which Dombrova expressed that he wanted defendant to vacate the premises. After defendant killed Dombrova, he fled the crime scene. The police investigating the crime discovered defendant's identity from a resume left at the apartment, and witnesses to the argument verified defendant's identity. The police further discovered that defendant was wanted for questioning in Buffalo concerning a similar homicide. In the course of their investigation, the police located defendant's former girlfriend who told them that defendant fled to Florida. They then placed a trap and trace/pin register on her phone, and, about a week after the homicide, defendant called the former girlfriend, was traced to Florida and arrested in that jurisdiction.

In a post-arrest statement, defendant told the police that, as a child, he was subjected to sexual abuse by his father over an extended period of time. Further, in written and videotaped statements, defendant admitted strangling Dombrova saying he "just lost it" and "snapped" when Dombrova grabbed his genitals and made other sexual advances towards him during their argument. Defendant said he strangled Dombrova with his hands and then used his belt to drag him to a closet in the apartment where the body was hidden. Defendant also admitted to strangling Kevin Bosinski in Buffalo on or about July 25, 2002—14 months before the Dombrova homicide—after meeting him in a bar. He said, on the night of the Buffalo homicide, he went to Bosinski's apartment and fell asleep. According to

defendant, when he awoke, he found Bosinski on top of him, kissing and grabbing him. In defendant's words, he "completely lost control" and began to strangle Bosinski with his hands; at some point defendant used his belt to kill Bosinski. Defendant further explained that he told both Dombrova and Bosinski about his history as a victim of sexual abuse.

Defendant was charged with two counts of murder in the second degree (Penal Law § 125.25 [1], [2]), concerning the death by strangulation of Victor Dombrova.[1] Prior to the jury trial for the Dombrova homicide, defendant announced he would raise the affirmative defense of extreme emotional disturbance, which, if successful, would mitigate, not negate, the element of intent and reduce the second-degree murder charge to first-degree manslaughter (another intentional crime) (see Penal Law § 125.25 [1] [a]; § 125.20 [2]).[2]

The People moved in limine, pursuant to *Molineux* and *People v Ventimiglia* (52 NY2d 350 [1981]), to permit introduction of defendant's statement regarding the death of Bosinski in Buffalo, arguing, inter alia, that defendant's statement regarding the Buffalo events is highly relevant to trial issues in the Brooklyn homicide because it is necessary to rebut the defense of extreme emotional disturbance. Supreme Court granted the motion to the extent of permitting the People to enter into evidence defendant's statement regarding the Bosinski strangulation and the autopsy report (to establish that Bosinski's death occurred) on a *Molineux* theory (5 Misc 3d 495 [2004]). In the court's view, defendant, by asserting the defense of extreme emotional disturbance, put his state of mind directly in issue, and therefore, "proof of other crimes may be admissible under the intent exception to the *Molineux* rule" (*id.* at 499). The court further reasoned that evidence of the Bosinski homicide

---

**1.** By a separate indictment, defendant was charged in Supreme Court, Erie County, with the Kevin Bosinski homicide.

**2.** In a prosecution for second-degree (intentional) murder, it is an affirmative defense that

> "the defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation . . . , the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be" (Penal Law § 125.25 [1] [a]).

The extreme emotional disturbance defense "permit[s] the defendant to show that his actions were caused by a mental infirmity not arising to the level of insanity, and that he is less culpable for having committed them" (*People v Patterson*, 39 NY2d 288, 302 [1976], *affd* 432 US 197 [1977]).

had a bearing on defendant's claim of extreme emotional disturbance because it tended to show that defendant had a premeditated intent to target gay men for violence, thereby countering defendant's claim that his "loss of control," and his actions as a result of this loss of control, arose from an impaired state of mind.

At trial, defendant admitted killing Dombrova and raised a defense of extreme emotional disturbance, claiming his violent response to Dombrova's unexpected sexual advances was due to mental illness caused by protracted sexual abuse he suffered as a child. Defendant's expert—Dr. Sanford L. Drob, a psychologist specializing in the areas of clinical and forensic psychology—testified that someone with defendant's history of abuse and resulting disorders would be prone to "revictimization," and therefore could experience more than one episode of extreme emotional disturbance when he finds himself in certain similar situations. But, the expert was unable to formulate an opinion to a reasonable degree of scientific certainty whether defendant had acted under extreme emotional disturbance in this case because he could not be sure, based on his discussions with defendant, what happened when defendant killed Dombrova. To rebut the defense, the People introduced defendant's statements about his strangulation of Bosinski. The jury rejected the extreme emotional disturbance defense and convicted defendant of murder in the second degree, for killing Dombrova. He was sentenced to an indeterminate prison term of 25 years to life. The Appellate Division affirmed Supreme Court's judgment (79 AD3d 768 [2010]), and a Judge of this Court granted defendant leave to appeal (17 NY3d 793 [2011]).

Defendant argues that his statement regarding the Bosinski homicide was inadmissible under *Molineux* and *Santarelli* because it had no direct or logical tendency to rebut his extreme emotional disturbance defense. In defendant's view, this evidence only shows that when he was confronted with sexual aggression, he snapped, facts wholly consistent with his extreme emotional disturbance defense. Defendant further contends that, even if the Bosinski evidence had some probative value, it should have been excluded because that value was minimal compared to its highly prejudicial impact in portraying defendant as someone who targets and kills gay men. For the reasons that follow, defendant's arguments are unavailing.

## II.

First pronounced by this Court in 1901 in *People v Molineux* (168 NY 264 [1901]), the familiar *Molineux* rule states that evidence of a defendant's uncharged crimes or prior misconduct is not admissible if it cannot logically be connected to some specific material issue in the case, and tends only to demonstrate the defendant's propensity to commit the crime charged (*see People v Alvino*, 71 NY2d 233, 253 [1987]; *People v Allweiss*, 48 NY2d 40, 46 [1979]; *see also People v Rojas*, 97 NY2d 32, 36 [2001] [The basic principle underlying *Molineux* and its progeny is that "a criminal case should be tried on the facts and not on the basis of a defendant's propensity to commit the crime charged"]). "While such evidence may be marginally relevant to the question of the accused's guilt, its probative value is deemed to be outweighed by its potential for prejudice, and, accordingly, the evidence is excluded as a matter of judicial policy" (*Santarelli*, 49 NY2d at 247, citing *Molineux* 168 NY at 294 [remaining citations omitted]). The evidence of a defendant's uncharged crimes and prior bad acts is

> "objectionable not because it has no appreciable probative value but because it has too much. The natural and inevitable tendency of the tribunal—whether judge or jury—is to give excessive weight to the vicious record of crime thus exhibited and either to allow it to bear too strongly on the present charge or to take the proof of it as justifying a condemnation, irrespective of the accused's guilt of the present charge" (1A Wigmore, Evidence § 58.2, at 1212; *see Rojas*, 97 NY2d at 36-37 ["propensity evidence invites a jury to misfocus, if not base its verdict, on a defendant's prior crimes rather than on the evidence—or lack of evidence—relating to the case before it"]).

Thus, "[w]here . . . the evidence proves only criminal propensity and serves no other function in demonstrating defendant's guilt of the crime charged, there is no legitimate basis for its admission. No degree of care, in assessing its value and possible prejudice and in giving cautionary instructions, can render it otherwise" (*Alvino*, 71 NY2d at 253). The *Molineux* rule is also meant "to eliminate the risk that a jury, not fully convinced of the defendant's guilt of the crime charged may, nevertheless, find against him because his conduct generally merits punishment" (*Allweiss*, 48 NY2d at 46 [citations omitted]).

On the other hand, where the proffered *Molineux* evidence is relevant to some material fact in the case, other than the defendant's propensity to commit the crime charged, it is not to be excluded merely because it shows that the defendant had committed other crimes (*see People v Ventimiglia*, 52 NY2d 350, 359 [1981] [The *Molineux* rule's "policy of protection against potential prejudice gives way when evidence of prior crime is probative of the crime now charged"]). Generally, evidence of uncharged crimes and prior bad acts may be admitted to prove the specific crime charged when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; and (5) the identity of the person charged with the commission of the crime on trial (*see Molineux*, 168 NY at 293). These categories are not exhaustive; they are meant to illustrate the type of analysis to apply in cases involving potentially prejudicial *Molineux* evidence (*see Ventimiglia*, 52 NY2d at 359).

To determine whether *Molineux* evidence may be admitted in a particular case, the trial court must engage in the following two-part inquiry (*see Alvino*, 71 NY2d at 242; *Allweiss*, 48 NY2d at 46-47): first, the proponent of the evidence must identify some material issue, other than the defendant's criminal propensity, to which the evidence is directly relevant (*see Alvino*, 71 NY2d at 242); once the requisite showing is made, the trial court must weigh the evidence's probative value against its potential for undue prejudice to the defendant (*see People v Hudy*, 73 NY2d 40, 55 [1988], *abrogated on other grounds by Carmell v Texas*, 529 US 513 [2000]).[3] If the evidence has substantial probative value and is directly relevant to the purpose—other than to show criminal propensity—for which it is offered, the probative value of the evidence outweighs the danger of prejudice and the court may admit the evidence (*see Allweiss*, 48 NY2d at 46-47; *People v McKinney*, 24 NY2d 180, 184 [1969]).

## III.

In this case, defendant claims that his act of strangling Dombrova, while intentional, was committed under a state of

---

**3.** This weighing of probative value versus potential for undue prejudice is discretionary; as such, our review is limited to determining whether the trial court abused its discretion; however, the threshold question of identifying a material issue to which the evidence is relevant poses a question of law (*see Hudy*, 73 NY2d at 55, citing *Alvino*, 71 NY2d at 242).

extreme emotional disturbance. In the context of this defense, the mental infirmity is typically "a loss of self-control" (*People v Harris*, 95 NY2d 316, 319 [2000]). The defense of extreme emotional disturbance has two elements. First, it must be determined that the defendant actually "acted under the influence of extreme emotional disturbance" (*People v Casassa*, 49 NY2d 668, 678 [1980]), a *subjective* determination. Second, there must be "a reasonable explanation" for the defendant's emotional disturbance, "determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be," an *objective* determination which is to be made by "viewing the subjective, internal situation in which the defendant found himself and the external circumstances as he perceived them at the time, however inaccurate that perception may have been" (*id.* at 678, 679). Unlike the situation where the defendant is claiming an innocent state of mind, the influence of an extreme emotional disturbance—if the defense is accepted—explains the defendant's actions, but "does not negate intent . . . [or] make the action any less intentional" (*People v Gonzalez*, 1 NY3d 464, 469 [2004]).[4]

By asserting the defense of extreme emotional disturbance, defendant necessarily put his state of mind at the time of the Dombrova killing in issue. We have held that where a defendant puts an affirmative fact—such as a claim regarding his/her state of mind—in issue, evidence of other uncharged crimes or prior bad acts may be admitted to rebut such fact (*see Alvino*, 71 NY2d at 248; *see e.g. People v Ingram*, 71 NY2d 474, 481 [1988] [in this prosecution for second-degree robbery, where the defendant allegedly acted as the getaway driver in connection with a holdup of a gas station, the defendant put the question of his criminal intent and state of mind directly in issue by offering an innocent explanation of his presence at the station and denying any knowledge that his accomplice planned to commit the robbery; the People were allowed to introduce evidence of a similar subsequent crime, under the intent or state of mind exception to the *Molineux* rule, to rebut the defendant's claim that he lacked the requisite mental state to be held criminally

---

4. The extreme emotional disturbance defense does not absolve the defendant of criminal responsibility, but allows him/her "to demonstrate the existence of mitigating factors which indicate that" he/she should be "punished less severely" (*People v Roche*, 98 NY2d 70, 75 [2002]) because the intentional homicide resulted from "an understandable human response deserving of mercy" (*Harris*, 95 NY2d at 318).

liable]; *Santarelli*, 49 NY2d at 248). In so holding, we have consistently applied the well-settled principles of *Molineux* and its progeny.

We last addressed the People's use of *Molineux* evidence to rebut a defense predicated on a defendant's impaired state of mind in *Santarelli*. In that case, the defendant was charged in connection with the shooting death of his brother-in-law. At trial, he claimed that when the killing took place, he suffered from "temporary insanity," thus putting his state of mind directly in issue. He sought to establish the defense through lay testimony concerning his unusual behavior in the weeks leading up to the shooting and through expert testimony indicating that his symptoms were consistent with a "break with reality" in the form of a "paranoid delusion" that his brother-in-law was trying to kill him (*id.* at 249). The prosecution sought to rebut defendant's claim by establishing that the shooting was a product of the defendant's explosive personality, not legal insanity. To that end, they offered proof, through testimony, that the defendant had committed a number of unprovoked, violent acts, unconnected with his brother-in-law, prior to the shooting at issue.[5] The trial court permitted the introduction of all the evidence, the jury rejected the defendant's claim of insanity and he was convicted of murder in the second degree; the Appellate Division affirmed.

This Court reversed the Appellate Division and remitted the case to County Court for further proceedings on the indictment, holding that "evidence of uncharged criminal or immoral conduct may be admitted as part of the People's case on rebuttal if it has a tendency to disprove the defendant's claim that he was legally insane at the time of the crime" (*Santarelli*, 49 NY2d at 248), and the trial court erred in admitting most of the evidence of defendant's past violent conduct which, contrary to our settled case law, was not directly relevant to the issue of defendant's sanity and which, in some cases, only demonstrated defendant's general propensity toward criminality (*see id.* at 247, 251-252). In so holding, the Court stated that evidence of bad acts must have some "logical relationship" to, and a "direct bearing upon," the People's effort to disprove the insanity defense on rebuttal (*id.* at 249, 252), and assertion of the

---

**5.** The prior bad acts evidence included defendant's participation in a barroom scuffle, his beating of a shop steward, and his conviction for possessing a gun.

insanity defense opens the door to bad acts evidence "only to the extent that such evidence has a natural tendency to disprove his specific claim" (*id.* at 249). The Court also reiterated that trial courts must "take special care to ensure not only that the evidence bears some articulable relation to the issue, but also that its probative value in fact warrants its admission despite the potential for prejudice" (*id.* at 250).

■ With the foregoing principles in mind, we hold that defendant's statement concerning the Bosinski homicide was properly admitted during the People's case on rebuttal. Here, the People sought to introduce the Bosinski evidence for reasons other than to show defendant's propensity towards violence. This highly probative evidence is directly relevant to defendant's extreme emotional disturbance defense in that it has a logical and natural tendency to disprove his specific claim that he was acting under an extreme emotional disturbance at the time of the Dombrova homicide (*see Santarelli*, 49 NY2d at 248). The evidence arguably shows that defendant had a premeditated intent to target gay men for violence, thereby tending to rebut the loss of control he claimed as part of his extreme emotional disturbance defense. Thus, the evidence tends to establish that the subjective element of the defense has not been made out.[6]

Further, the prosecution's theory was that defendant deliberately targeted and killed gay men, and introducing defendant's statement regarding the Bosinski homicide was consistent with this theory. Although the Bosinski and Dombrova homicides have strikingly similar characteristics, from the way each victim was killed to defendant leaving town after each killing, and it can be argued that the admission of the Bosinski statement is overly prejudicial propensity evidence, it is equally true that the repetition, duplication and similarity of defendant's acts have a direct bearing on the question of premeditated intent. By asserting that he killed Dombrova under a state of extreme emotional disturbance, defendant put his state of mind at the

---

6. The evidence is also relevant to the objective element of the extreme emotional disturbance defense. Under the circumstances, it was arguably foreseeable to defendant that if Dombrova made an unwanted sexual advance toward him, like Bosinski did, he could react violently. Because defendant twice put himself in a position where he could commit a deadly act, a jury could reasonably find that defendant's emotional response to Dombrova's advance was unreasonable, as opposed to "an understandable human response deserving of [the] mercy" afforded by the extreme emotional disturbance defense (*Harris*, 95 NY2d at 318).

time of the Dombrova homicide squarely in issue. As defendant's state of mind was the main question the jury was required to resolve (based on all the relevant evidence), it logically follows that the jury had to be permitted to decide whether the repetitive actions defendant engaged in rebutted his claim of extreme emotional disturbance.[7]

## IV.

█ Defendant further argues that he was denied effective assistance of counsel solely for defense counsel's failure to object to prejudicial comments the prosecutor allegedly made during summation. During her summation, the prosecutor described defendant as a "predator" who systematically preyed upon the vulnerable. Although defense counsel did object to certain of the prosecutor's summation comments, he did not object to the prosecutor's characterization of defendant's conduct as predatory. However, defendant has not shown that counsel lacked a legitimate explanation for not objecting or that, if counsel had objected, a mistrial would have been warranted. Further, the prosecutor's characterization of defendant's behavior as predatory was arguably a fair response to defense counsel's summation argument that defendant's acts were a reaction to what he perceived as a threat against him. Moreover, it was consistent with the prosecution's theory of the case, i.e., based on the evidence adduced at trial, defendant acted with premeditation, not under the influence of an extreme emotional disturbance.

Defendant has not shown that defense counsel provided less than meaningful representation (see People v Benevento, 91 NY2d 708 [1998]); nor is counsel's failure to object here the type of error that is so egregious or so clear cut and completely dispositive as to render counsel's assistance ineffective (see People v Turner, 5 NY3d 476 [2005]); accordingly, defendant's claim that he was denied effective assistance of counsel fails.

## V.

We have considered the arguments raised in defendant's pro se supplemental brief, and conclude they are unreviewable or lack merit.

7. Since evaluation of defendant's repetitive actions are not beyond the ken of the average juror, it was not necessary for the People to offer expert testimony to rebut the expert testimony offered by defendant.

Accordingly, the order of the Appellate Division should be affirmed.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ, SMITH and PIGOTT concur.

Order affirmed.