This opinion is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------

No. 171
The People &c.,
            Respondent,
        v.
Daniel Israel,
            Appellant.

            Jan Hoth, for appellant.
            Deborah L. Morse, for respondent.

STEIN, J.:

        Late one evening in June 2007, defendant happened upon an altercation on a street in Manhattan and saw his friend being chased by several men. As one of those men attempted to hit defendant's friend, defendant -- who was otherwise uninvolved in the events leading up to the dispute -- fired a gun multiple

- 1 -

times into the group, killing one person and injuring two others. Police officers arriving at the scene of the fight witnessed defendant begin shooting and, upon their approach, defendant fired in their direction before eventually surrendering after he was shot by their return fire. Defendant was subsequently charged with various crimes in connection with the shooting, including two counts of murder in the second degree (Penal Law § 125.25 [1], [2]) and two counts of attempted murder in the first degree (Penal Law §§ 110.00; 125.27 [1] [a] [i]).

Defendant did not contest his identity as the shooter. Rather, at trial, defendant pursued an extreme emotional disturbance defense in an effort to mitigate the degree of his criminal liability in connection with the homicide charges (see Penal Law §§ 125.25 [1] [a]; 125.27 [2] [a]).[1] Defendant attempted to establish that, at the time of the 2007 shooting, he suffered from post-traumatic stress disorder (PTSD) due to an

---

[1] A defendant who proves an affirmative defense of extreme emotional disturbance by a preponderance of the evidence may be convicted of manslaughter in the first degree, rather than murder, on the basis that "some homicides are worthy of mitigation because they result from an understandable human response deserving of mercy" (People v Roche, 98 NY2d 70, 75 [2002] [internal quotation marks omitted]; see Penal Law §§ 125.20 [2]; 125.25 [1] [a]; 125.27 [2] [a]). Extreme emotional disturbance is "a mental infirmity not rising to the level of insanity at the time of the homicide, typically manifested by a loss of self-control;" to succeed on that defense, a defendant must prove that he or she, subjectively, was acting under the influence of such a disturbance and that, objectively, there was a reasonable explanation or excuse for that disturbance (Roche, 98 NY2d at 75; see People v Cass, 18 NY3d 553, 561 [2012]; People v Diaz, 15 NY3d 40, 45 [2010]).

altercation in October 2005 in which he was stabbed eight times in the back during a fight with two individuals.  The defense theory was that defendant's PTSD was triggered by seeing his friend endangered by circumstances arguably similar to those in which defendant had been stabbed, thus causing him to react to the street fight by pulling out his firearm and shooting into the fray.

In support of this defense, Yshande Lucas -- a former friend of defendant -- testified that, before the 2005 stabbing, defendant was a "[l]oving, caring, [and] gentle" person but, afterward, defendant's behavior changed in that he started drinking alcohol excessively and became more aggressive.  In addition, psychiatrist Stephen Bates Billick opined that the experience of being stabbed numerous times in October 2005 caused defendant to suffer from PTSD, which went untreated and, in Billick's view, was triggered by the events leading up to the shooting such that defendant was reliving the experience of his stabbing and lacked the intent to commit murder.  On cross-examination, Billick testified that defendant was "not a violent person by nature" and "did[ no]t have a . . . significant history of having done violent acts."

The People sought to rebut defendant's extreme emotional disturbance defense by demonstrating that his violent actions on the day of the shooting were unrelated to any PTSD diagnosis.  To that end, the People sought to cross-examine

defendant's witnesses and introduce testimony regarding, as relevant here, three incidents in which defendant allegedly reacted with physical violence either unprovoked or in response to minor provocation.  Through these incidents, the People intended to disprove the assertions of Billick and Lucas that defendant was a calm, peaceful person whose commission of the charged crimes was explainable only through the PTSD diagnosis, by demonstrating that -- even before his stabbing in 2005 -- defendant had an explosive personality characterized by responding with disproportionate violence.

Specifically, during the cross-examination of Lucas, the prosecutor was allowed to inquire -- after informing the court that there was a witness who observed the entire altercation and its precipitating events -- whether Lucas had personal knowledge of an incident, in May 2005 (before the stabbing), during which defendant punched a fast-food restaurant employee in front of a police officer after the employee misunderstood his food order.  Lucas denied having any personal knowledge of that altercation.  The People were also permitted to ask Lucas whether he was aware that, on an occasion in 2002 (also before the stabbing), defendant had "punched" and "choked" a girl who had insulted his mother.  Lucas testified that he had "heard" that the girl "said something" and defendant "pushed her" into a wall.

On Billick's cross-examination, the prosecutor was

similarly permitted to inquire whether Billick's opinion that defendant's conduct was prompted by PTSD would change if he learned of these two instances of violence occurring before defendant was stabbed.  Billick acknowledged that both the 2002 and 2005 altercations involved inappropriately violent reactions, but he testified that the occurrences did not change his stated opinion.  He was also asked whether his conclusion that defendant was acting in a PTSD-induced haze at the time of the shooting would be affected if he were to learn that, three years after the shooting and while incarcerated, defendant had shattered an inmate telephone and threatened a corrections officer.  Billick maintained his opinion, remarking that he saw no "pervasive pattern of violence" in defendant's actions.

On the People's rebuttal case, neuropsychologist William Barr testified that there was "no evidence" that defendant was suffering from PTSD or that PTSD influenced his behavior at the time of the shooting.  In addition, the People called two witnesses -- a police officer and a corrections officer -- to testify about two of the incidents into which the prosecutor had inquired on cross-examination of defendant's witnesses.  The testimony of the police officer who arrested defendant following the May 2005 incident at the fast-food restaurant revealed that -- contrary to the prosecutor's prior assertion -- he lacked personal knowledge of the events preceding that physical altercation; therefore, upon defendant's objection,

the trial court offered to strike the testimony (see generally People v Santarelli, 49 NY2d 241, 250-251 [1980]).  Defense counsel chose, instead, to cross-examine the officer, and he elicited testimony establishing the officer's lack of knowledge of provocation.  The People's next witness, a corrections officer, testified that, in August 2010 (three years after the shooting), he observed defendant strike the receiver of an inmate telephone against its base and then throw the telephone to the floor because he "felt like it."  Defendant then cursed at and threatened the officer.

After the close of proof, the court instructed the jury that the testimony regarding defendant's volatile behavior at times other than the shooting was admitted for a limited purpose, could not be considered as establishing a general criminal propensity, and was to be used only to evaluate the psychiatric testimony and the witnesses' bases for their testimony as to defendant's state of mind.  Following deliberations, the jury acquitted defendant of one count of attempted murder in the first degree, but rejected his extreme emotional disturbance defense and found him guilty of intentional murder in the second degree and attempted intentional murder in the first degree, as well as the remaining charged crimes.  The Appellate Division affirmed (111 AD3d 413 [1st Dept 2013]), a Judge of this Court granted defendant leave to appeal (23 NY3d 1021 [2014]), and we now affirm.

Defendant argues that he was deprived of a fair trial because the testimony elicited regarding the three uncharged bad acts -- namely, the 2002, 2005, and 2010 incidents detailed above -- should have been excluded.  As the People contend, defendant's challenge to the admissibility of testimony concerning his 2005 assault of a restaurant worker is unpreserved or was waived at trial because defendant rejected the court's offer to strike the testimony, elected to cross-examine the police officer, and never moved for a mistrial on the ground that the prejudice caused by this evidence was incurable (cf. People v Albert, 85 NY2d 851, 852 [1995]; People v Heide, 84 NY2d 943, 944 [1994]).  Therefore, such challenge is not properly before us.

With regard to the propriety of the testimony concerning the other two incidents, "evidence of a defendant's uncharged crimes or prior misconduct is not admissible if it cannot logically be connected to some specific material issue in the case, and tends only to demonstrate the defendant's propensity to commit the crime charged" (People v Cass, 18 NY3d 553, 559 [2012]; see People v Alvino, 71 NY2d 233, 241-242 [1987]; People v Molineux, 168 NY 264, 291-293 [1901]).  Consequently, "'[w]here . . . the evidence proves only criminal propensity and serves no other function in demonstrating defendant's guilt of the crime charged, there is no legitimate basis for its admission.  No degree of care, in assessing its value and possible prejudice and in giving cautionary

instructions, can render it otherwise'" (Cass, 18 NY3d at 559, quoting Alvino, 71 NY2d at 253).  Where, however, evidence of a defendant's bad acts or uncharged crimes is "relevant to some material fact in the case, other than the defendant's propensity to commit the crime charged, it is not to be excluded merely because it shows that the defendant had committed other crimes" (Cass, 18 NY3d at 560).

Evidence of uncharged criminal conduct or bad acts that are probative of a defendant's state of mind may be admissible if the defendant "opens the door" to such evidence by putting in issue his state of mind at the time of the commission of the charged crime by, for example, raising an extreme emotional disturbance or insanity defense (Cass, 18 NY3d at 563; see Santarelli, 49 NY2d at 248-249; see also People v Bradley, 20 NY3d 128, 133 [2012]).  Nevertheless, such a defense opens the door to the People's rebuttal evidence "only to the extent that [the proffered] evidence has a natural tendency to disprove [the defendant's] specific claim" (Santarelli, 49 NY2d at 249).  That is, evidence of uncharged crimes or bad acts is admissible to rebut an extreme emotional disturbance defense where the evidence has "some 'logical relationship' to, and a 'direct bearing upon,' the People's effort to disprove" the defense, and the probative value of the evidence outweighs its prejudicial effect (Cass, 18 NY3d at 562, quoting Santarelli, 49 NY2d at 249, 252; see Bradley, 20 NY3d at 133).  Although the balancing of probative

value against potential prejudice is a matter that lies within the trial court's discretion (see People v Morris, 21 NY3d 588, 595 [2013]), "the threshold question of identifying a material issue to which the evidence is relevant poses a question of law" (Cass, 18 NY3d at 560 n 3).

Applying the foregoing, we conclude that the trial court here properly allowed the prosecutor to inquire about the 2002 incident in which defendant reacted with violence to a verbal insult to his mother.  The crux of the defense was that defendant, a previously nonviolent person, was suffering from PTSD as a result of the 2005 stabbing incident and that his actions in firing into the group on the street were attributable to his PTSD.  By raising this defense and presenting the testimony of Lucas and Billick -- both of whom testified regarding defendant's personality and behavior before the 2005 stabbing as compared with his behavior after that event -- defendant "necessarily put[] in issue some aspects of his character and personal history" (Santarelli, 49 NY2d at 248). The prosecutor's inquiries pertaining to the 2002 incident were "directly relevant to the question of defendant's reaction patterns" because it was an instance in which "defendant had resorted to violence in the face of relatively mild provocation" before the 2005 stabbing occurred (Santarelli, 49 NY2d at 252). This altercation "ha[d] a logical and natural tendency to disprove [defendant's] specific claim" that he was an otherwise

peaceful person who reacted with violence only because his PTSD was triggered by the circumstances in which the shooting took place (Cass, 18 NY3d at 563). In other words, it tended to refute the subjective element of defendant's defense, i.e. that he actually acted under the influence of PTSD. Moreover, the court's decision to allow this incident to be explored on cross-examination, rather than through the testimony of a rebuttal witness, was not improper under the facts presented here. Defendant's direct examinations of Lucas and Billick opened the door to questions about specific acts that undermined their testimony about defendant's character prior to the 2005 stabbing (see generally People v Kuss, 32 NY2d 436, 43 [1973], cert denied 415 US 913 [1974]), and the People had a good-faith basis for their knowledge of the 2002 incident and the provocation involved.

We agree with defendant, however, that reference to the 2010 incident in which he broke an inmate telephone and threatened a corrections officer should have been excluded. The key dispute at trial was whether defendant was suffering from PTSD *at the time of the shooting* and whether, when he fired his weapon, he was acting under the influence of that disorder. Although evidence of defendant's disproportionately violent reaction to mild provocation *prior* to the 2005 stabbing was directly relevant to an assessment of the effects of the stabbing on his state of mind and whether he acted out of extreme

emotional disturbance when he committed the charged offenses less than two years later, we fail to see the materiality of defendant's misbehavior while incarcerated *three years after* the shooting for which he was being tried.  This evidence was not probative as it neither tended to prove nor disprove that defendant was acting under the influence of PTSD when he fired his weapon, and it did not advance the People's efforts to rebut the affirmative defense.  Rather, in our view, the testimony pertaining to this incident was relevant only insofar as it related to defendant's general criminal propensity and, therefore, it should have been excluded (see Bradley, 20 NY3d at 134; Santarelli, 49 NY2d at 251).  Nonetheless, the error was harmless -- particularly in light of the limiting instructions provided by the trial court -- because the proof was overwhelming and there is no significant probability, on this record, that the jury would have acquitted defendant of murder and attempted murder but for the admission of the testimony relating to the 2010 incident (see People v Arafet, 13 NY3d 460, 467 [2009]; People v Crimmins, 36 NY2d 230, 242 [1975]).  Accordingly, the order of the Appellate Division should be affirmed.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order affirmed.  Opinion by Judge Stein.  Chief Judge Lippman and Judges Pigott, Rivera, Abdus-Salaam and Fahey concur.

Decided November 18, 2015