The People of the State of New York, Respondent,
against
Albert Halimi, Appellant.




Nassau County Legal Aid Society (David Bernstein, Esq.), for appellant.
District Attorney Nassau County (Cristin N. Connell, Esq.), for respondent.

Appeal from a judgment of the District Court of Nassau County, First District (Francis Ricigliano, J.), rendered January 27, 2014. The judgment convicted defendant, upon a jury verdict, of petit larceny.




ORDERED that the judgment of conviction is affirmed.
Defendant was charged with petit larceny based on an incident which occurred on April 10, 2012, in which defendant pried the mezuzah (an encased religious item consisting of a piece of parchment containing biblical verses) from the doorjamb of the complainant's apartment, using a chisel or a screwdriver. A video recording of the incident did not show the face of the perpetrator, but, after viewing the video, the complainant identified defendant as the perpetrator.
The People sought a pretrial ruling permitting them to introduce evidence at the trial that, on March 6, 2011, someone had put glue in one of the locks of the door of the complainant's apartment. The complainant had called the police, after which the police had installed a video camera in the vicinity of the door of the apartment, which camera recorded the incident occurring on April 10, 2012. The prosecutor argued that the evidence should be admitted to establish the identity of the perpetrator. Alternatively, the prosecutor asked the court to admit the evidence of the prior incident as background information, and to explain why the video camera had been installed in the first place. Defendant's counsel opposed the application, arguing that the People were offering the evidence to show defendant's propensity to commit the crime he was charged with. The court permitted the People to elicit testimony of the March 2011 incident on their direct case.
Also prior to the jury trial, after the jurors had been selected, one of the jurors told the court and counsel that he might know defendant, because defendant might be related to the juror's best friend, and defendant may have been a guest at a family wedding. The juror indicated, however, that he had never said a word to defendant. He explained to the court that [*2]his possible knowledge of defendant would not affect his ability to be fair and impartial. However, the juror, who was an Orthodox Jew, was concerned that such a case was the subject of a criminal prosecution. He opined that a case of an alleged stealing of a mezuzah from a next-door neighbor should be settled in a rabbinical court, and the fact that the case was in a criminal court might affect his opinion on the case.
The court told the juror that he should not consider why the People were prosecuting this case; the juror should consider what the law is. If the People proved the case beyond a reasonable doubt, he would have to find defendant guilty, and if not, he would have to find defendant not guilty. Defendant's counsel also asked the juror a series of questions regarding his ability to be fair. The juror again stated that the fact that this case was brought in a criminal court raised doubts about it, because the case involved "such a minor issue." The prosecutor argued that the juror had "come to a predetermination about the status of the case." Defendant's counsel did not consent to the discharge of the juror. The court discharged the juror pursuant to CPL 270.35. The court indicated that "in response to a specific question," the juror "stated that in view of his position concerning the gravity of this case that he cannot be fair and impartial in this case."
At the jury trial, the complainant's mother testified that she had purchased a mezuzah approximately six years before the trial in this case, and placed it on the jamb on the right side of her apartment door. On April 10, 2012, she opened her door, and the mezuzah was gone. She was unable to identify the perpetrator from the video; all she was able to discern from the video was someone with a chisel in his or her hand removing the mezuzah.
The complainant testified that she and her mother had lived in their apartment for approximately 40 years and defendant had lived one floor below them for approximately nine years. The complainant had seen defendant in the building approximately once per week, or more than 100 times. Defendant had a distinct type of walk, which was "slightly bowlegged with a very determined gait," with his arms curved out a little, almost as if he were marching. Both during the winter and the summer, defendant wore a puffy, down-like jacket with a sliver or gray stripe along the back. He had nondescript wire-frame glasses.
The complainant testified that she was awake and on her computer at approximately 3:00 a.m. on March 6, 2011, when she heard some noise outside her apartment. When she went to check, she saw someone running down the hall and into the stairway, wearing a gray coat. She recognized that person as defendant, based on his clothing and his glasses. She observed that the bottom lock on her apartment door contained glue, which was dripping from the lock. She did not see anybody put glue in the lock. The complainant called the police, but no one was arrested or prosecuted in connection with that incident. After the incident, the police placed a video camera outside her door in the molding of the door.
On April 10, 2012, the complainant exited the door of her apartment and noticed that the mezuzah was missing. It had been pried off the door. The complainant and her mother called the police. A member of the Nassau County Police Electronics Squad viewed the video from the surveillance camera, and showed it to the complainant. She saw a man on the video with a puffy jacket who was slightly bowlegged with a possibly unique walk, including a determined step, as if he were marching. He pried the mezuzah off the door with his left hand, using a screwdriver or another type of tool. He was also wearing a baseball cap, straight-leg black jeans, a pair of [*3]black New Balance sneakers, and glasses. The complainant was "[o]ne hundred percent sure" that the person in the video was defendant. She did not give defendant permission or authority to take the mezuzah.
During cross-examination, the complainant conceded that she could not see anyone's face in the video. She agreed that there were other people who were about defendant's height, and that jeans and New Balance sneakers were fairly common. There were no eyewitnesses to the theft of the mezuzah. The only evidence was the video, and the complainant's knowledge of defendant, including his walk. The complainant stated that she did not like defendant and would not mind if he moved out of the building.
Defendant moved at the close of the People's case for a trial order of dismissal on the ground that the People had failed to establish a prima facie case. The prosecutor opposed the motion, based on the complainant's testimony. The District Court denied the motion.
Defendant's counsel renewed his objection to the court's admission of the evidence regarding the March 2011 incident in which glue had been placed in the complainant's bottom lock, arguing that there was no issue regarding identity, as the complainant and defendant knew each other. Permitting such evidence as background information was inflammatory and overly prejudicial. The court denied the application, and indicated that it would provide the jury with a Molineux charge.
In his summation, defendant's counsel stated that he personally thought that the complainant had "actually arranged for somebody to frame Mr. Halimi and set him up." The court sustained the prosecutor's objection to the comment. The court sustained its own objection when counsel added, "[a]nyway, that would explain it."
The court provided the following instruction regarding Molineux evidence (see People v Molineux, 168 NY 264, 293 [1901]):
"There is evidence in this case that on another occasion the defendant engaged in conduct involving the defendant placing glue in the lock of the complainant's apartment door. That evidence was not offered and must not be considered for the purpose of proving that the defendant had a propensity or predisposition to commit the crime charged in this case. It was offered for background information and is evidence for your consideration on the question of the defendant's identity as the perpetrator of the crime charged in this case. If you find the evidence believable, you may consider it for that limited purpose and for none other."
Counsel objected to the court providing such a charge.
During deliberations, the jury viewed the video three times and asked for a readback of the testimony regarding the March 2011 incident. The court declined counsel's request that, in light of the readback of the testimony, the court repeat the Molineux charge. The court indicated that the jury had not asked the court to repeat the instruction.
On appeal, defendant argues that the court erred in permitting the prosecutor to elicit Molineux evidence regarding the alleged March 2011 incident, as the identity exception did not apply. Furthermore, to complete the narrative, the jury should have been told simply that a video camera had been installed based on a prior incident involving the complainant's property. He further argues that the verdict of guilt was against the weight of the evidence, as the perpetrator's face was not visible from the video, and the complainant's identification testimony regarding [*4]clothing and defendant's attributes, which were common, was deeply flawed and suspect. In addition, the court incorrectly discharged a sworn juror, and the court improperly interfered with counsel's summation argument that the complainant could have arranged for someone to dress like defendant and steal the mezuzah in front of the camera, thereby framing defendant for the crime. Finally, defendant claims that he was denied the effective assistance of trial counsel, in that, among other things, counsel failed to cross-examine the complainant regarding several inconsistencies between her pretrial-hearing testimony and her trial testimony.
"[E]vidence of uncharged crimes is inadmissible where its purpose is only to show a defendant's bad character or propensity towards crime" (People v Morris, 21 NY3d 588, 594 [2013]; see People v Cass, 18 NY3d 553, 559 [2012]; People v Dorm, 12 NY3d 16, 19 [2009]; People v James, 132 AD3d 905, 905-906 [2015]). Such evidence may be admitted to establish intent, motive, knowledge, common scheme or plan, or identity of the defendant (see People v Arafet, 13 NY3d 460 [2009]; People v Molineux, 168 NY at 293; People v Johnson, 137 AD3d 811, 812 [2016]). The identity exception applies where the defendant employs a unique, unusual, or distinct modus operandi in committing the uncharged crime (see People v Mateo, 93 NY2d 327, 332 [1999]; People v Wright, 121 AD3d 924, 926 [2014]). Such evidence may also properly be admitted to complete the narrative of the events charged and provide necessary background information (see People v Tosca, 98 NY2d 660 [2002]; People v Johnson, 137 AD3d at 812).
The evidence of the March 2011 incident was properly admitted to provide background information as to why the police had placed a video surveillance camera in the molding area near the top of the apartment door, and any potential prejudice was alleviated by the court's instructing the jury as to the limited purpose of the evidence (see People v Wallace, 128 AD3d 866, 868 [2015]). Moreover, the evidence was admissible for "the relevant, nonhearsay purpose of explaining the investigative process" (People v Ludwig, 24 NY3d 221, 231 [2014]).
The court correctly discharged one of the jurors and replaced him with an alternate, as it determined, "from facts unknown at the time of the selection of the jury," that the juror was "grossly unqualified to serve in the case" (CPL 270.35). The trial court's reasons for concluding that the juror had a state of mind that would prevent him from rendering an impartial verdict were placed on the record (see People v Buford, 69 NY2d 290, 298 [1987]). The court had properly engaged in a probing and tactful inquiry regarding what the juror had seen, heard, or acquired knowledge of, and assessed its importance and its bearing on the case. The juror was unable to unequivocally "state that he could reach a fair and impartial decision" (People v Hernandez, 92 AD3d 802, 803 [2012]), as, on several occasions, he told the court that he did not believe that a case alleging the removal and stealing of a mezuzah belonged in a criminal court.
A defendant has the right to make an effective closing argument. This right is impaired when counsel is unjustifiably limited while making appropriate comments on the evidence adduced at the trial (see People v Middleton, 212 AD2d 809, 811 [1995]; People v Luis, 189 AD2d 657 [1993]; People v Reina, 94 AD2d 727, 728 [1983]). However, a trial court may limit summation comments to matters of evidence properly adduced at the trial (see People v Singh, 138 AD3d 767, 767-768 [2016]; People v Paixao, 23 AD3d 677 [2005]; People v Romano, 301 AD2d 666, 667 [2003]). Counsel "may not become a witness in the case . . . nor may he or she comment upon matters not in evidence or otherwise engage in speculation" (People v Forbes, [*5]111 AD3d 1154, 1158 [2013]). Here, counsel attempted to provide the jury with his personal opinion and to engage in speculation. Counsel prefaced his comment with what he "personally" thought. Thus, defendant's claim that the court erred in limiting his summation is without merit
Similarly, defendant's claim that he was denied the effective assistance of trial counsel is without merit (see People v Caban, 5 NY3d 143, 152 [2005]; People v Izzo, 104 AD3d 964, 966-967 [2013]; People v Bleakley, 141 AD2d 553, 554-555 [1988]).
In conducting an independent review of the weight of the evidence (see People v Danielson, 9 NY3d 342, 348 [2007]), this court accords great deference to the jury's opportunity to view the witnesses, hear their testimony, and observe their demeanor (see People v Lane, 7 NY3d 888, 890 [2006]; People v Mateo, 2 NY3d 383 [2004]; People v Bleakley, 69 NY2d 490, 495 [1987]). Here, we find that the verdict of guilt was not against the weight of the evidence.
Accordingly, the judgment of conviction is affirmed.
Iannacci, J.P., Tolbert and Brands, JJ., concur.