People v Cota (2021 NY Slip Op 06574)





People v Cota


2021 NY Slip Op 06574


Decided on November 24, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:November 24, 2021

110740
[*1]The People of the State of New York, Respondent,
v
Tyler J. Cota, Appellant.

Calendar Date:October 12, 2021

Before:Garry, P.J., Lynch, Aarons, Pritzker and Reynolds Fitzgerald, JJ.

Kathy Manley, Selkirk, for appellant.
Weeden A. Wetmore, District Attorney, Elmira (Philip A. Alvaro of counsel), for respondent.



Aarons, J.
Appeal from a judgment of the County Court of Chemung County (Rich Jr., J.), rendered July 20, 2018, upon a verdict convicting defendant of the crime of criminal possession of a controlled substance in the third degree.
Defendant was charged by indictment with criminal possession of a controlled substance in the third degree and criminal possession of a weapon in the second degree stemming from an incident where he was in his sister's apartment and a gun and crack cocaine, among other things, were discovered in a bedroom therein. Following a jury trial, defendant was convicted of criminal possession of a controlled substance in the third degree and acquitted of the remaining charge. Defendant was thereafter sentenced to a term of imprisonment, to be followed by a period of postrelease supervision. Defendant appeals. We reverse.
Defendant's argument that the verdict was against the weight of the evidence centers on the notion that the evidence failed to show that he constructively possessed the discovered crack cocaine. "[T]o support a charge that a defendant was in constructive possession of tangible property, the People must show that the defendant exercised dominion or control over the property by a sufficient level of control over the area in which the contraband is found or over the person from whom the contraband is seized" (People v Manini, 79 NY2d 561, 573 [1992] [internal quotation marks and citation omitted]; see People v Maricle, 158 AD3d 984, 986 [2018]). A defendant's mere presence in an apartment where the contraband is discovered (see People v Headley, 74 NY2d 858, 859 [1989]; People v Yerian, 163 AD3d 1045, 1047 [2018]; People v Edwards, 206 AD2d 597, 597 [1994], lv denied 84 NY2d 907 [1994]) or mere knowledge that contraband is present (see People v Maricle, 158 AD3d at 986; People v Edwards, 206 AD2d at 598) does not prove constructive possession.
The record discloses that an officer, his partner and a trainee officer, all of whom were with the City of Elmira Police Department, went to an apartment in response to a domestic disturbance call. Defendant's sister, the apartment's owner, informed the officers upon their arrival outside of the apartment building that she wanted defendant and his friend to leave. After the trainee knocked on the apartment door, the door was locked with a dead bolt. The partner went around the back side of the building and then defendant opened the apartment door. The trainee testified that defendant came outside of the apartment and was advised that he was not supposed to be there. Defendant went back inside, the officers followed him inside and defendant's friend was in the living room. While inside, the officers learned from the partner that someone had dropped suspected narcotics out of the apartment window. The officer and the trainee then secured defendant and his friend and searched the apartment with the sister's consent.
The officer testified that, in the living room, he found [*2]a small bag of marihuana under the couch cushion and a red backpack that had inside what he recognized to be drug-packaging materials. The red backpack belonged to defendant, and the officer stated that he did not find any drugs inside of it. The officer and the trainee then searched the south bedroom, where an identification card bearing defendant's name was found in a dresser drawer and narcotics packaging materials and knives were found on top of the dresser. According to the officer, one of the knives had a white powdery residue on it but he also admitted that the residue was not tested. The officer also found a sandwich bag in a closet containing what he believed to be powdered cocaine. A camouflage backpack belonging to defendant's friend was also in the south bedroom, and there were scales and plastic packaging materials in it. The trainee testified that, when he searched the north bedroom — the sister's bedroom — he saw a pile of laundry and, when he moved articles of female clothing aside with his foot, he found a bag of crack cocaine under it. A digital scale was also found in the north bedroom in the vicinity of the crack cocaine.
While the apartment was being searched, defendant was taken to the police station.[FN1] The officer eventually interviewed defendant, who informed the officer that he arrived at his sister's apartment 10 minutes before law enforcement had arrived. According to the officer, defendant said that he went to his sister's apartment almost on a daily basis and stayed there for varying periods of time but that he lived somewhere else. The officer also stated that defendant denied having knowledge of drugs being in the apartment.
Defendant's friend testified on defendant's behalf and stated that, at the time the officers knocked on the door, he was in the north bedroom and defendant was in the living room. The friend admitted to throwing drugs out the window and possessing the crack cocaine in the apartment. The friend also testified that defendant had no knowledge that drugs were in the apartment and that he did not see defendant possess any drugs while therein.
A contrary result would not have been unreasonable given the testimony of defendant's friend that the crack cocaine was his and that he threw some out of the window (see People v Edwards, 39 AD3d 1078, 1079 [2007]). That said, viewing the evidence in a neutral light and weighing the relative probative force of the proof, the jury's determination that defendant constructively possessed the crack cocaine was not supported by the weight of the evidence. The crack cocaine was not discovered in the same room as defendant or near him. Indeed, the officer testified on cross-examination that he did not find any drugs near defendant. Rather, the crack cocaine was found in the north bedroom, i.e., his sister's bedroom. There was no proof indicating that any of defendant's personal belongings were in the north bedroom (compare People v Buchanan, 95 AD3d [*3]1433, 1434-1435 [2012], lvs denied 22 NY3d 1039, 1043 [2013]). Moreover, the crack cocaine was not seen in open view but instead underneath a pile of female clothes. Even accepting that defendant was a daily visitor to his sister's apartment, the proof does not establish that he resided there or that he exercised any dominion or control over any part of it (see People v Butts, 177 AD2d 782, 784 [1991]).
The People point to the fact that drug packaging materials and equipment were found throughout the apartment. The one scale that was in open view, however, was located in the north bedroom, and the remaining scales were found in the friend's camouflage backpack. Notwithstanding the discovery of plastic bags in the living room and both bedrooms, as well as the amount of cash found on defendant and the discovery of an identification card in the south bedroom, and even if the testimony of the friend is deemed unworthy of belief, the trial evidence, when viewed in a neutral light, does not establish beyond a reasonable doubt that defendant constructively possessed the crack cocaine found in the north bedroom (see People v Edwards, 39 AD3d at 1080). Accordingly, the verdict was against the weight of the evidence (see People v Ponder, 191 AD3d 1409, 1410-1411 [2021]; People v Oldacre, 53 AD3d 675, 679 [2008]; People v Davis, 153 AD2d 949, 951 [1989], lv denied 75 NY2d 769 [1989]; compare People v Echavarria, 53 AD3d 859, 862 [2008], lv denied 11 NY3d 832 [2008]).
To the extent that the People rely upon the drug factory presumption (see Penal Law § 220.25 [2]), there is no indication in the record that the People proceeded on this theory [FN2] or requested that the drug factory presumption be charged to the jury. As such, the People cannot rely on this theory for the first time on appeal (see People v Hutchins, 136 AD3d 1148, 1150 n 1 [2016]). Based upon our determination herein, defendant's remaining contentions are academic.
Garry, P.J., Lynch, Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the judgment is reversed, on the law, and indictment dismissed.



Footnotes

Footnote 1: A search of defendant revealed over $2,000 in cash on him.

Footnote 2: During summation, the prosecutor remarked that constructive possession was "precisely the theory of the People's case."