People v Henderson (2026 NY Slip Op 01627)

People v Henderson

2026 NY Slip Op 01627

Decided on March 19, 2026

Court of Appeals

Troutman, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 19, 2026

No. 21

[*1]The People & c., Respondent,
vLashawn Miller Henderson, Appellant.

Clea Weiss, for appellant.
Ryan P. Ashe, for respondent.

TROUTMAN, J.:
Generally, evidence of a defendant's prior possession of drugs is inadmissible at trial to show their intent to sell drugs or knowing possession of drugs on another occasion (see e.g. People v Valentin, 29 NY3d 150, 156 [2017]; People v Blair, 90 NY2d 1003, 1005 [1997]; People v Alvino, 71 NY2d 233, 246 [1987]; People v Crandall, 67 NY2d 111, 119 [1986]). This follows from our longstanding Molineux rule, which provides that "evidence of a defendant's uncharged crimes or prior misconduct is not admissible if it cannot logically be connected to some specific material issue in the case, and tends only to demonstrate the defendant's propensity to commit the crime charged" (People v Cass, 18 NY3d 553, 559 [2012]; see People v Molineux (168 NY 264 [1901]). When evidence of prior uncharged crimes or misconduct is logically connected to some specific material issue in the case—such as intent, motive, knowledge, common scheme or plan, or identity of the defendant—the evidence falls under an exception to the Molineux rule, and a court may admit the evidence if its probative value outweighs its potential for prejudice to the defendant (see id. at 559-560).
Here, because the People's evidence of a prior incident involving defendant's possession of drugs was not logically connected to any specific material issue in this drug possession case, apart from defendant's propensity for possessing drugs, the trial court erred in admitting that evidence. Inasmuch as this error was not harmless, we reverse and remit for defendant to receive a new trial.I.
Early one morning in October 2019, a SWAT team executed a search warrant at a home in Rochester, using controlled explosives to force open the door. Inside, defendant and his girlfriend were in bed in the south bedroom. Defendant's father was in the west bedroom with defendant's 11-year-old sister, and his grandmother was in the living room. While searching the premises, the police found cocaine, scales, and packaging materials like plates, razors, and baggies. They arrested and charged every adult in the home. A grand jury subsequently indicted defendant and his father on three counts of criminal possession of a controlled substance in the third degree, based on "intent to sell" (Penal Law § 220.16 [1]); one count of criminal possession of a controlled substance in the third degree, based on weight (§ 220.16 [12]); and four counts of criminally using drug paraphernalia in the second degree (§ 220.50 [2], [3]).
Before trial, the People sought to introduce Molineux evidence of defendant's conviction of criminal possession of a controlled substance in the third degree, based on weight, after narcotics were recovered by police from defendant's vehicle in 2017. Instead of explaining a particular basis for which the People sought to use the Molineux evidence, the People listed every possible reason, asserting that the evidence would "show defendant's motive, opportunity, intent, identity, and absence of mistake or accident in committing the charged crimes during the jury trial"; "defendant used the same modus operandi"; and defendant "had the requisite mens rea." Defendant opposed the application, specifically noting that there was no dispute as to the "issue of intent." The court ruled the evidence admissible.
The People called as witnesses four police officers who took part in the SWAT team's execution of the search warrant. The officers' testimony established the locations within the home where they found each person and each piece of contraband. The largest amount of cocaine was found in a sneaker in the west bedroom, which was the father's bedroom. Cocaine and packaging materials were found in the living room where the grandmother was found. In the south bedroom, where defendant and his girlfriend were sleeping, the police found three vials of cocaine inside of another sneaker that was hanging on the wall, as well as paraphernalia in two shoeboxes on the [*2]floor. A witness testified about how cocaine can be cooked, broken down, and packaged, noting that three vials of packaged cocaine found in the south bedroom were of a "dime bag" size quantity compared to the large, unpackaged "cookie" in the west bedroom. Defense counsel's cross-examinations of those witnesses centered on the issue of constructive or knowing possession. He cross-examined each witness about the absence of defendant's fingerprints on the contraband, and he tried to establish the paucity of evidence connecting defendant to the apartment.
The People called their Molineux witness, an officer with the Rochester Police Department's Tactical Unit who arrested defendant in March 2017. For the first time, the People explained that they sought to introduce Molineux evidence only for the purposes of proving "knowing possession and intent." The court's limiting instructions directed the jury to consider the Molineux evidence for only those purposes.
The officer testified that during a snowstorm, in March 2017, he and his partner investigated a "suspicious" parked BMW occupied by defendant and two other men. He also testified about an Audi—"parked approximately 50 feet behind the [BMW]"—which the officer knew was registered to defendant. The officer testified that he looked through the windows of the Audi and saw a "white, rocky substance in little baggies in the driver's door, in plain view." After a search warrant was obtained, the car was found to contain cocaine, marijuana, defendant's ID cards, and mail addressed to defendant. The People then introduced a certificate of conviction showing that defendant had pleaded guilty to one count of attempted criminal possession of a controlled substance in the third degree, in satisfaction of the charges resulting from the 2017 incident, and was sentenced to one year of incarceration. The court then repeated its limiting instructions to the jury.
Defendant did not call any witnesses, but the parties stipulated that defendant's father was convicted of criminal possession of the cocaine found in the sneakers in both the west and south bedrooms, with the intent to sell. That stipulation was read to the jury. During summation, the People referenced the Molineux evidence regarding defendant's previous drug conviction and argued that defendant and his father were running a drug business together.
The jury acquitted defendant of the two counts relating to the cocaine found in his father's bedroom but convicted him of the counts relating to the cocaine and paraphernalia found in the living room and the south bedroom. The court sentenced defendant to prison for eight years and postrelease supervision for three years.
At the Appellate Division, defense counsel argued that the trial court erred in admitting the Molineux evidence. The Court rejected the argument, stating that "the testimony regarding defendant's prior conviction is relevant and admissible with respect to the issue of defendant's intent to sell drugs inasmuch as it is probative of defendant's knowing possession of . . . and . . . intent to sell the cocaine located throughout the apartment" (234 AD3d 1254, 1257-1258 [4th Dept 2025] [citations and internal quotation marks omitted]). The Court further held that the trial court "did not abuse its discretion in concluding that the probative value of the evidence outweighed its prejudicial effect" and that the court's limiting instructions "mitigated any prejudice to defendant" (id. at 1258 [internal quotation marks omitted]).
Two Justices dissented, concluding that the trial court erred in admitting the Molineux evidence (see id. at 1258-1262). They further opined that the error was not harmless (see id. at 1261-1262). One of the dissenting Justices granted leave to appeal.II.
To avoid "infecting jury deliberations with forbidden propensity inferences," our State's Molineux rule bars trial courts from admitting into evidence a defendant's prior uncharged crimes [*3]or bad acts (People v Telfair, 41 NY3d 107, 114 [2023], citing Molineux, 168 NY at 291-292). The rule is of ancient origin and is
"rooted in that jealous regard for the liberty of the individual which has distinguished our jurisprudence from all others, at least from the birth of Magna Charta. It is the product of that same humane and enlightened public spirit which, speaking through our common law, has decreed that every person charged with the commission of a crime shall be protected by the presumption of innocence until [they have] been proven guilty beyond a reasonable doubt" (Molineux, 168 NY at 291 [internal quotation marks omitted]).
Despite the venerable roots of this rule, courts sometimes struggle when considering its well-established exceptions, whereby evidence of uncharged crimes or prior misconduct may be admissible to prove "some element of the crime under consideration" (Telfair, 41 NY3d at 114 [internal quotation marks omitted]). For example, evidence of uncharged crimes or prior misconduct may "be relevant[] to show: (1) intent, (2) motive, (3) knowledge, (4) common scheme or plan, or (5) identity of the defendant" (People v Leonard, 29 NY3d 1, 7 [2017]). But courts must not allow these exceptions to swallow the rule. To prevent that from happening, courts must engage in a careful analysis and avoid the temptation to apply these exceptions too broadly.
When assessing the admissibility of Molineux evidence, a trial court must first "determine whether the People have 'identif[ied] some material issue, other than the defendant's criminal propensity, to which the evidence is directly relevant' " (People v Denson, 26 NY3d 179, 185 [2015]). As we have explained, Molineux evidence is only admissible if it can "logically be connected to some specific material issue in the case" and is "directly relevant" to it (Cass, 18 NY3d at 559-560). It is the prosecution's burden to show this direct relevance (see Denson, 26 NY3d 179, 185-186). Whether the prosecution met its burden is "a question of law," not a question of the court's discretion (see Cass, 18 NY3d at 560 n 3). As a result, at this step, appellate review of a court's admission of Molineux evidence is de novo.
If the evidence is relevant to an issue other than propensity, the inquiry moves to the second step where courts consider whether the probative value of the evidence outweighs its potential for prejudice (see id. at 560). The standard of review for this second step is whether the trial court's decision to admit the Molineux evidence was an abuse of discretion as a matter of law (see id. at 560 n 3). Lastly, "[i]f the Court concludes that Molineux evidence was erroneously admitted, harmless error analysis determines whether a new trial is warranted" (Telfair, 41 NY3d at 114).A. Constructive or Knowing Possession
The main issue at trial was whether defendant had constructive or knowing possession of the contraband distributed throughout three rooms in the apartment. We agree with the dissenting Justices below that defendant's possession of cocaine in his car in 2017 was not relevant to that issue. The two incidents involved different locations, different circumstances, different theories of possession, and took place around two years apart.
Our decision in Telfair is instructive. There, we considered a defendant's prior possession of weapons as Molineux evidence in a trial for criminal possession of a weapon where the defendant claimed he did not know there were guns in his vehicle, because someone else had packed it (Telfair, 41 NY3d at 112). The People's Molineux evidence consisted of two prior incidents when the defendant was found with guns and claimed he did not know they were in his possession [*4]because, in each incident, his former girlfriend had placed them there (id.). The trial court admitted the evidence for the jury's consideration regarding the issues of knowing possession and absence of mistake—two exceptions to the Molineux rule (id. at 111). We held that the prior incidents did not fall under those Molineux exceptions because they "involved different guns, different sets of circumstances, different excuses, and occurred more than 10 years earlier" (id. at 116).
Like Telfair, here, the evidence of the 2017 incident was "similar only in broad respects" to the 2019 incident (id.). Defendant's plea of guilty to possessing cocaine found in a car registered to him in 2017 does not shed light on whether he had constructively possessed the cocaine and paraphernalia in an apartment where he was sleeping in 2019. The type of location was different: a car instead of an apartment. The circumstantial evidence of constructive possession was different: cocaine found in a car registered to defendant as opposed to cocaine found at an apartment occupied by four other individuals, one of whom, the father, had mail addressed to him there. And the theory of possession was different: individual possession of drugs in a car as opposed to joint possession of drugs in an apartment with others present.
In the prior incident, the cocaine was also packaged in a different way, having been contained in 53 "little baggies" and "bags." Here, by contrast, the cocaine in the south bedroom was in "vials" that were stored in one baggie. Further, the cocaine in the living room was unpackaged. It was leftover product on a plate where a larger amount of cocaine had been broken down into consumer sized "rocks." The cocaine in the bedroom of defendant's father was a large "cookie," not broken down into smaller rocks or packaged for sale.
We are not convinced by the People's contention that the Molineux evidence here is similar enough to the presently charged offenses to be relevant. The People underscore that the cocaine in both incidents was "mixed in with" mail, but that assertion is not supported by the record. Nor is their assertion that the mail was "in the same shoeboxes that contained the drugs." The cocaine in the south bedroom was in a pair of sneakers hanging on the wall. The only mail recovered was in a box on the floor of the south bedroom, which contained drug-dealing paraphernalia, not cocaine. The mere fact that baggies and mail were allegedly present in each instance is far too tenuous of a connection to be relevant. The only significant commonality between the 2017 and 2019 incidents is defendant's being accused of possessing cocaine in both instances, which is exactly the type of propensity evidence that Molineux forbids.
If the dissent had their way, however, "evidence of a defendant's uncharged crimes" would be admissible anytime a defendant denies engaging in a similar crime on another occasion, even if the uncharged crime cannot "logically be connected to some specific material issue in the case, and tends only to demonstrate the defendant's propensity to commit the crime charged" (People v Sin, 44 NY3d 455, 459 [2025] [internal quotation marks omitted]; accord People v Weinstein, 42 NY3d 439, 455 [2024]; see dissenting op at 4). That would be counter to the foundational policy undergirding the Molineux rule:
"It is elementary that evidence of a defendant's prior criminal or immoral conduct is inadmissible if it cannot logically be linked to some specific material issue in the case. Although such evidence has some minimal probative worth because of its tendency to demonstrate the defendant's bad character and general criminal propensity, it is excluded as a matter of law when it has no additional relevance to a specific issue, because there is a very real danger that the trier of fact will overestimate its significance" (People v Hudy, 73 [*5]NY2d 40, 54-55 [1988] [citations omitted]).
The dissent's accusation, that we are somehow following "a concerning trend by this Court of 'circumventing' Molineux's two-step analysis," could not be further from the truth (dissenting op at 4), given that we explicitly reaffirm that long-established analysis in this very opinion (see supra at 7). The only "trend" that we are following is over a century of precedent, as is our obligation under the doctrine of stare decisis.
Just as we have recognized that "using evidence of prior gun possession to prove current knowing possession of different guns" is not justified under Molineux (Telfair, 41 NY3d at 118), the same is true for using evidence of prior drug possession to prove current, knowing possession of drugs.[FN*] Consequently, the Molineux evidence here was inadmissible to prove constructive or knowing possession.B. Intent
As the People concede, evidence of prior acts offered to prove intent may fail at step one of the Molineux analysis when intent is easily inferable (see Leonard, 29 NY3d at 8). Here, the element of intent was not disputed by defendant, an unsurprising fact given our observation in Alvino that "[i]n most cases involving criminal sale of drugs, intent is readily inferable from the sale itself and evidence of prior uncharged crimes is neither necessary nor permissible to establish it" (71 NY2d 233, 246 [1987]). Similar to when a defendant is caught in a drug transaction, here "[t]he intent [to sell the cocaine] is so apparent . . . under the facts and circumstances of this case[] that the introduction of evidence of other and dissimilar offenses cannot be justified as an attempt to prove intent" (People v Harvey, 235 NY 282, 296 [1923]).
The intent of whoever possessed the drugs to sell the drugs was not at issue and was readily inferable from the nature of the contraband that defendant was criminally charged with possessing. As defendant made clear in his opposition to the People's Molineux application, there was no dispute about the "issue of intent." Defendant's representations aside, the police found not only drugs in the apartment, but multiple scales for weighing drugs, unused baggies and vials for packaging drugs, and plates and razor blades, indicating that cocaine was being broken up into rocks for packaging and sale. The People's witnesses explained that the house had "workstations" for packaging the cocaine. And, as the People accurately stated in summation, "[t]he police didn't find any pipes and there was no paraphernalia indicating they were using drugs [or] smoking drugs. The only paraphernalia they found here was the stuff you need to sell drugs." As a result, the intent of whoever owned the cocaine to sell it was "easily inferred" from the People's evidence (Alvino, 71 [*6]NY2d at 242).
The facts in drug trafficking cases where we have held otherwise are a far cry from the facts of this case. For example, in Alvino, we deviated from the general rule prohibiting evidence of a defendant's prior drug sales because the "defendant did not merely rest on his claim that he was not guilty of selling drugs; he testified to facts in the nature of confession and avoidance, admitting the lesser crime of possessing drugs but denying the greater crime of selling them" (id. at 247). We explained that, "[b]y doing so, he reframed the dispute before the court and affirmatively attempted to convince the jury of his innocence not just in this instance but because his entire history was inconsistent with guilt" (id.). Under those particular facts, we held that "[t]he People were entitled to rebut that testimony by evidence of prior crimes suggesting otherwise" (id.).
Our current case, however, is more like People v Blair, which involved a jury trial for various drug-related crimes (90 NY2d 1003, 1004 [1997]). There we held that the trial court erred in allowing Molineux evidence in the form of a "rebuttal witness who testified that approximately eight months before execution of the search warrant, defendant had supplied her with drugs, which he had retrieved from a back room in his apartment" (id.). In reaching that conclusion, we said that "whether defendant intended to sell the drugs, knew of their weight, or mistakenly or accidentally sold or possessed the drugs was never placed in issue by defendant" (id. at 1005). We further explained that "[t]he People's rebuttal testimony concerning an alleged drug transaction eight months before the events for which he was convicted did nothing to refute defendant's claim that he had been framed, but merely tended to show his propensity to sell drugs" (id.; see People v Crandall, 67 NY2d 111, 118 [1986]) ["(S)uch evidence is not admissible when it 'has no bearing other than to show that defendant is of a criminal bent or character' "]).
Similarly, where, as here, defendant's theory of the case is that he was never in possession of the drugs found in his father's apartment in 2019—and that they were his father's drugs—the fact that defendant was caught with drugs in 2017 "merely tended to show [defendant's] propensity to sell drugs" (Blair, 90 NY2d at 1005). The 2017 incident was otherwise not "linked to a specific material issue or fact relating to the crime charged" in 2019 (id.). Defendant never asserted that the drugs found in the apartment were for personal use or were otherwise not being sold. His strategy at trial was to establish that all the contraband in the house belonged to his father, not him. Despite what the dissent contends (see dissenting op at 4), defendant's references to his father pleading guilty to possessing cocaine found in the south bedroom, with the intent to sell, did not make it somehow permissible for the jury to consider defendant's unrelated conviction of drug possession in 2017. Given that defendant never questioned what we phrased in Molineux as the "conclusive inference of criminal intent which proof of the act itself affords"—here the intent to sell cocaine—the court erred in admitting the Molineux evidence (Molineux, 168 NY at 299).
As a result, we need not address the second step of the Molineux analysis, since the People failed to establish at the first step that the evidence fell under an exception to the Molineux rule (see People v Cass, 18 NY3d 553, 559 [2012]). Having determined that it was error to admit the Molineux evidence, we now consider whether that error was harmless.C. Harmless Error Analysis
The trial court's erroneous admission of Molineux evidence was not harmless. A Molineux error may be found harmless only if both "the proof of the defendant's guilt, without reference to the error, is overwhelming" and "there is no significant probability . . . that the jury would have acquitted the defendant had it not been for the error" (People v Arafet, 13 NY3d 460, 467 [2009] [internal quotation marks omitted], quoting People v Crimmins, 36 NY2d 230, 241-242 [1975]). [*7]That is not the case here.
"A defendant's mere presence in an apartment where the contraband is discovered or mere knowledge that contraband is present does not prove constructive possession" (People v Cota, 199 AD3d 1237 [3d Dept 2021] [citations omitted]; see People v Manini, 79 NY2d 561, 573 [1992]; People v Headley, 74 NY2d 858, 859 [1989]). Here, once we discount the improper evidence of defendant's past possession of cocaine, there is scarcely any evidence of defendant's dominion and control over the contraband found in the apartment.
Although the dissent repeatedly references residue allegedly found on paraphernalia concealed in shoeboxes located in the south bedroom (see dissenting op at 2, 6), no one was charged with possessing cocaine found in those shoeboxes. Without the court's admission of improper propensity evidence, the jury would be left with little more than defendant and his girlfriend being awakened on an air mattress during a SWAT team raid after spending the night at the apartment of defendant's father in a bedroom where no contraband was visible. Furthermore, the inferences the dissent draws from this limited circumstantial evidence are highly debatable and hardly convincing (see id. at 6). As a result, the proof of defendant's guilt, without reference to the Molineux error, was not overwhelming and so "the error cannot be classified as harmless" (People v Smith, 33 NY3d 454, 461 [2019]).
Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.

CANNATARO, J. (dissenting):

Contrary to the majority, I would hold that the trial court properly admitted the Molineux evidence to prove defendant's knowing possession and intent to sell drugs. But even if it was error to admit the Molineux evidence, I would nevertheless hold that any error was harmless given the overwhelming proof of defendant's guilt and the remote possibility that the evidence in question affected this jury's well-considered split verdict. Therefore, I respectfully dissent.I.
Defendant was arrested after police raided a two-bedroom apartment in Rochester. There was a living room in the center of the apartment, with two bedrooms opening directly onto it from the south and west walls respectively. Defendant was found asleep with his girlfriend on an inflatable mattress in the south bedroom. Police found vials of crack cocaine inside a pair of sneakers hanging [*8]above the bed. They also found two shoeboxes with drug processing paraphernalia: one containing a plate and razor with cocaine residue and some unused small plastic bags, and another containing two small scales of the type commonly used to weigh drugs for packaging. The latter shoebox also contained letters addressed to defendant at a different address, a letter apparently addressed to his father "Lashawn Miller" at the other address, and a picture of defendant with a friend. Police also found keys to the apartment on the windowsill. There were piles of men's clothing on the floor, and a garbage bag and rubber container containing more men's clothing. Defendant was observed taking some of this clothing from the floor to dress himself before being removed from the apartment. Police also encountered defendant's father in the west bedroom, and discovered a large amount of crack cocaine inside sneakers in that room as well. In the living room, police observed another plate and razor with crack cocaine on it, as well as a scale, in open view on a table in the center of the room.
Defendant was charged with three counts of criminal possession of a controlled substance in the third degree based on "intent to sell," relating to the drugs found in both of the bedrooms and the living room (Penal Law § 220.16 [1]); one count of criminal possession of a controlled substance in the third degree, based on weight, relating to the drugs found in the west bedroom (Penal Law § 220.16 [12]); and four counts of criminally using drug paraphernalia in the second degree (Penal Law § 220.50 [2], [3]). The People sought to introduce, and the trial court admitted, Molineux evidence relating to defendant's 2017 conviction for possession of crack cocaine with intent to sell, for the purpose of showing defendant's knowledge and intent to sell in this case. The court instructed the jury that it could only consider the evidence for this purpose. In his defense, defendant maintained during trial that only his father lived at the apartment, that the drugs and paraphernalia belonged to his father, and that only his father was selling drugs.
During its deliberations, the jury sent a note to the court requesting to see the contents of the shoebox found in the south bedroom, where defendant was found sleeping, containing the scales and various items that were purportedly defendant's personal effects. The jury then convicted defendant of the charges based on drugs and other items found in the south bedroom and living room, but acquitted him of the charges stemming from the west (father's) bedroom. Defendant now requests that his conviction be vacated, contending that the Molineux evidence should not have been admitted, and that the error was not harmless.II. 
As an initial matter, I disagree that the Molineux evidence was admitted in error. As the Appellate Division recognized, Supreme Court properly identified a non-propensity purpose for which the evidence was relevant (see 234 AD3d at 1257-1258). Both knowing possession and intent to sell—on the part of defendant—were contested at trial (cf. People v Valentin, 29 NY3d 150, 156 [2017]). Defendant's entire theory was that, as an overnight guest, he did not possess or control the drugs in his father's apartment, and consequently only the person who possessed the drugs could have the requisite intent to sell them. Indeed, during summation defense counsel argued that defendant had no physical or constructive possession of the drugs, no knowledge of the presence of the drugs in any of the rooms in the home, and that there was no evidence "that he was intending to sell" drugs. As the Appellate Division held, testimony of defendant's prior conviction was admissible "inasmuch as it is probative of defendant's knowing possession of and intent to sell the cocaine located throughout the apartment" (234 AD3d at 1257-1258). It was then within the trial court's discretion to determine whether the evidence's probative value exceeded the potential for [*9]prejudice, and that decision "may not be disturbed simply because a contrary determination could have been made or would have been reasonable" (People v Morris, 21 NY3d 588, 597 [2013]). I agree with the Appellate Division's conclusion that "the court did not abuse its discretion in concluding that the probative value of the evidence outweighed its prejudicial effect" (234 AD3d at 1258).
The majority's conclusion that the People failed to identify a non-propensity issue to which the evidence is relevant (majority op at 13) represents the most recent example in a concerning trend by this Court of "circumventing" Molineux's two-step analysis (see People v Telfair, 41 NY3d 107, 130 [2023] [Cannataro, J., dissenting]); see also People v Weinstein, 42 NY3d 439 [2024]). With the latest iteration of this new approach, it is now questionable whether "this case-specific, discretionary exercise" continues to "remain[] within the sound province of the trial court" (Morris, 21 NY3d at 596-597), or if the recent restrictions placed on the use of Molineux evidence ensure that appellate courts review—and reject—admission of this evidence solely as a matter of law.III.
The merits of the Molineux determination aside, I would also affirm because any error in admitting the evidence was ultimately harmless. Under People v Crimmins, non-constitutional legal error in admitting certain evidence is harmless when there is other "overwhelming" proof of guilt, and when there is "no significant probability" that the jury would have acquitted defendant absent the error (36 NY2d 230, 241-243 [1975]). Both elements are easily met here.
The People presented ample evidence at trial establishing that defendant exercised dominion and control over the south bedroom. Defendant dressed himself using clothes taken from the pile on the floor of the bedroom, strongly suggesting that the clothes belonged to him. Defendant kept keys to the apartment and the front door of the building on the windowsill next to the bed. The sneakers containing vials of drugs hung over the bed—an unusual way to store sneakers that would at least suggest that the person sleeping there possessed them and wanted them within reach of the bed for some purpose. Scales commonly used to weigh drugs were found in a shoebox along with an assortment of defendant's personal belongings, including letters to both "Lashawn Miller-Henderson" and "Lashawn Miller" (the latter potentially defendant's father, or potentially defendant himself without the latter half of his last name), each addressed to the same location,[FN*] During summation, the People argued that the existence of these letters and the state of the apartment showed that both men lived together at a previous address, and had just moved together to this apartment. But whether this letter was intended for his father at their mutual address, or for defendant by a sender who had not bothered to spell his full last name, either notion points towards guilt and not away from it. as well as a photo of defendant with someone other than his father. The razor and plate with cocaine residue and the unused plastic bags were found in the bedroom as well. It is also undisputed that defendant's father lived in a separate bedroom in the apartment (the west bedroom), and aside from the presence of a letter addressed to "Lashawn Miller," there was no proof that anything else in that bedroom belonged to the father.
Given the evidence that defendant resided in the apartment, there was likewise ample proof for the jury to have found that he had at least joint constructive possession of the drugs and paraphernalia found in the living room. The living room occupies most of the square footage of the [*10]apartment. Both bedrooms open onto the living room directly; it is impossible to enter either of the bedrooms without passing through it. The contraband was in open view on the table in the center of the living room. And the processing paraphernalia found there was identical to the items found in the south bedroom (scales, dinner plate, and razor).
Furthermore, there is no significant risk that the jury would not have convicted defendant without the Molineux evidence. Given the jury's reasoned verdict, it is more likely that the jury attached little weight to the Molineux evidence. The most contested issue at trial was whether defendant constructively possessed the contraband in the apartment, an issue on which the jury apparently focused. In a request to the court during deliberations, the jury asked to see "the paperwork found in the shoebox with the 2 digital scales," which is solely relevant to determining whether defendant was living and keeping personal effects in the south bedroom. The jury also rendered a split verdict, acquitting defendant of the charges stemming from the contraband found in his father's room. The different outcomes for these charges turn solely on defendant's constructive possession of the contraband. That "the jury rendered a discerning and discrete verdict" indicates that they were not improperly prejudiced by the Molineux evidence (see People v Till, 87 NY2d 835, 837 [1995]).
Finally, there is no dispute that the trial court issued several detailed and sufficient limiting instructions. The trial court instructed the jury that the Molineux evidence was not being offered "for the purpose of proving that the defendant had a propensity or predisposition to commit the crimes charged" and was only offered regarding "the question of knowing possession and intent." The jury heard this instruction three times: before and after the jury first received the Molineux evidence, and during the court's final jury instructions. The court's instructions were "well-timed, thorough, and in no way compounded the potential prejudice to defendant" (People v Morris, 21 NY3d 588, 598 [2013]). Defendant's argument that the limiting instructions should not be used as a cure-all for Molineux errors misses the point. This Court has always acknowledged the potential for limiting instructions to offset potential prejudice (see People v Frumusa, 29 NY3d 364, 373 [2017] ["(A) limiting instruction generally may be used to minimize any potential undue prejudice from the admission of evidence"]; People v Israel, 26 NY3d 236, 244 [2015]; People v Small, 12 NY3d 732, 733 [2009]). At the very least, these instructions mitigated the risk that the jury would improperly consider the Molineux evidence for propensity purposes (see Morris, 21 NY3d at 598 ["Jurors are presumed to have followed a trial judge's limiting instructions"]), and thus counsel in favor of a harmlessness finding here.
For these reasons, I would affirm the order of the Appellate Division.
Order reversed and a new trial ordered. Opinion by Judge Troutman. Chief Judge Wilson and Judges Rivera and Halligan concur. Judge Cannataro dissents and votes to affirm in an opinion, in which Judges Garcia and Singas concur.
Decided March 19, 2026

Footnotes

Footnote *: The outcome would, of course, be different if the facts of this case mimicked those of People v Hayward (42 NY3d 753 [2024]). There, we unanimously agreed that "[t]he trial court did not err in holding that evidence that defendant [himself] had completed an uncharged drug sale hours before the search warrant was executed was relevant to defendant's constructive possession and intent to sell the drugs found in the apartment during execution of the search warrant," because "[t]he uncharged sale occurred in the same apartment in which police subsequently recovered the drugs defendant was charged with possessing" (id. at 758 [emphasis added]). No such logical connection between the uncharged crime and a specific material issue exists in the present case, however.